IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD J. GALLO,

    Plaintiff(s),                    08cv0504
                                             **ELECTRONICALLY FILED**

    v.

WASHINGTON COUNTY ET AL.,

    Defendant(s).

## Memorandum Opinion on Summary Judgment

**I.    Introduction**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff, Ronald Gallo ("Gallo"), contracted Methicillin Resistant Staphylococcua Aureua ("MRSA"), while an inmate at Washington County Prison. He alleges that defendants Washington County, Joseph S. Pelzer ("Warden Pelzer") and Cheryl McGavitt ("Nurse McGavitt") (collectively referred to as "Washington County defendants") were deliberately indifferent to his medical needs, in violation of the Eighth Amendment to the United States Constitution, and that they failed to implement and enforce policies to protect plaintiff from MRSA, while utilizing policies and customs that placed plaintiff (and others) at risk of infection, in violation of 42 U.S.C. § 1983. Plaintiff also brings supplemental state law claims for professional negligence against Drs. Jeffrey Minteer, M.D., Richard Aprea, M.D., and David Druskin, P.A. (collectively referred to as "the physician defendants") for their alleged negligence in treating and/or failing to treat plaintiff's serious medical condition.

Pending before this Court are the motions for summary judgment and supporting documentation filed on behalf of the physician defendants (doc. no. 59) and the Washington

County defendants (doc. no 62). After careful consideration, and for the reasons that follow, this Court finds that plaintiff has failed to adduce evidence from which a reasonable finder of fact could determine that the actions and policies of the Washington County defendants amounted to deliberate indifference, as is required in order to maintain an action under the Eighth Amendment. The Court finds that when judging the facts in the light most favorable to plaintiff as the non-moving party, the facts may establish a case of negligence against the Washington County defendants, but falls short of the quantum of culpability required in order to maintain a civil rights action for violation of the Eighth Amendment. Therefore, summary judgment will be GRANTED as to the Washington County defendants (doc. no. 62). The Court will decline to exercise its supplemental jurisdiction to hear the remaining state law professional negligence claim against the physicians, will dismiss this claim without prejudice for said claim to be re-filed in state court, and accordingly, the Court will decline to rule on the physician defendants' motion for summary judgment (doc. no. 59).

## II.    Summary Judgment Standards

Summary judgment under Fed.R.Civ.P. 56© is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. School Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001), *quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir. 2001) (citations omitted). In deciding a summary judgment motion, the court must "view the evidence . . . through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved his case by the quality and quantity of

the evidence required by the governing law or that he did not." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 247 (3d Cir. 2002), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Thus the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (*citing Celotex*, 477 U.S. at 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n. 1 (3d Cir. 1994).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004.) *See also Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001) (court must view facts in the light most favorable, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving party ).

### III.    Material Facts

The Court has gleaned to following factual background, which unless otherwise noted, is undisputed.[1]

#### a. Plaintiff's First Antibiotic Treatment at Washington County Correctional Facility

Plaintiff was admitted to the Washington County Correctional Facility on June 30, 2006 for an alleged parole violation and was seen by a nurse upon intake. Prior to his incarceration, plaintiff was treated at a local hospital for an infection in his finger and was prescribed a prescription for Keflex, which he did not take. Plaintiff was again prescribed Keflex by defendant David Druskin, a Physicians Assistant ("Druskin") at the Washington County Correctional Facility for the infection in his finger. That medication was administered by the nursing staff four times a day for five days. Plaintiff was re-evaluated by defendant Druskin on July 3, 2006.

#### b. Plaintiff is Moved to a New Cell

According to plaintiff, on the night he was placed into a new cell, at 9:15 p.m. on August 21, 2006, he was not permitted to clean his cell by the corrections officer who placed him in his cell, despite jail policy requiring him to clean and disinfect his cell (jail policies are discussed

---

[1] Plaintiff has submitted a counter-statement of material facts (see doc. no. 70), which defendants have not contested. The Court will judge these facts as undisputed.

more fully below in section d). Plaintiff was not permitted to clean his cell until a few days later.

Shortly after being placed into the cell, plaintiff was allegedly told by some unnamed person that the prior inhabitant in his cell had MRSA. The inmate housed in the cell immediately before plaintiff (S.M.) was treated on August 21, 2006 (the same day as plaintiff's transfer into the new cell) for MRSA-like symptoms and was prescribed Bactrim.[2] The inmate's culture for MRSA came back positive.

### c. Plaintiff Is Diagnosed With MRSA

On August 24, 2006, defendant Nurse McGavitt (who is the nursing supervisor at the Washington County Correctional Facility) evaluated plaintiff at the direction of Deputy Warden John Temas because of a concern expressed by family members that he was not getting enough to eat, and during that evaluation, plaintiff made no complaints to defendant Nurse McGavitt. Two days later, on August 26, 2006, plaintiff complained of a sore on his arm which was beginning to hurt. On August 26, 2006, as a result of that complaint, plaintiff was examined by a nurse and was told to place warm compresses on the area and that a recheck would be done in the morning.

On the morning of August 27, 2006, plaintiff was rechecked by the nurse at which the sore exhibited no redness, swelling or drainage. However, on the evening of August 27th, the

---

[2] In response to defendants' failure to comply with the Order of Court (doc. no. 68) granting an earlier plaintiff's motion to compel (doc. no. 58), the Court granted plaintiff's motion for sanctions (doc. no. 79) and ruled that "pursuant to F.R.C.P. 37(b)(A)(I), it is taken as established that Inmate S.M. immediately preceded Ronald Gallo in cell Three East Deck 21A and, further, that the culture of S.M.'s infection was positive for MRSA." See doc. no. 87. Further, the Court awarded plaintiff his reasonable attorneys' fees and costs and set a briefing schedule for the filing of said motion for attorneys' fees. *Id*.

sore began to exude a light tan colored drainage and, according to defendant Nurse McGavitt, plaintiff was advised to keep it clean and covered, and he was placed on sick call for the next day.

On August 28, 2006, plaintiff was again evaluated by defendant Druskin, a culture of the wound was taken, and he was started on Augmentin (an antibiotic). On August 30, 2006, the antibiotic was changed to Bactrim and prescribed for seven days because the culture showed MRSA bacteria ("numerous MRSA"). During the time period when plaintiff was being treated with Bactrim, plaintiff told his grandmother that his elbow was clearing up and that he was feeling better.

Nonetheless, plaintiff was given instructions by the prison staff as to the restrictions that were going to be placed upon him by the prison as a result of his MRSA diagnosis - - specifically, that he would be the last inmate to take a shower and that he would be required to disinfect the shower after his use of it. Plaintiff complained to his grandmother about being the last person to take a shower and then having to clean it after all of the other inmates; plaintiff, however, understood that the prison was trying to isolate him in an attempt to contain his illness.

After plaintiff's diagnosis with MRSA, he was housed in a single cell and a nurse administered or delivered the Bactrim to plaintiff by delivering it to a common area every day for seven days. No further follow-up on plaintiff was performed by the medical staff at that time.

### c. Plaintiff Seeks Further Medical Treatment

Then, on September 19, 2006, plaintiff requested a sick call for pain he was experiencing in his leg. According to plaintiff, his sick call was denied by defendant Nurse McGavitt, with no explanation.

On September 22, 2006, plaintiff again requested to be seen and, upon examination, he was given Motrin for his leg. Plaintiff allegedly noted during his examination that playing basketball was the only physical activity he recalled recently performing; but, he denied any injury. The sick call sheet filled out by plaintiff on September 19, 2006, indicated "knee sore--b-ball."

### d. Plaintiff Is Transferred to a Clinic Cell

On September 22, 2006, plaintiff was moved by defendant Nurse McGavitt to a clinic cell in the prison clinic because he was in pain and was having difficulty walking. Three days after plaintiff was moved to the clinic, defendant Nurse McGavitt ordered Nurse Dayton to document the observation of plaintiff's leg and note his temperature, which was done until approximately September 25, 2006. During his time in the clinic cell, prison staff observed him every day. Plaintiff denies however, that he was examined every day that he was in the clinic cell. During this time period, no further MRSA culture was run. Also, during this period of time, plaintiff's grandmother contacted the jail and the County Commissioners on numerous occasions and allegedly urged them to check plaintiff for MRSA.

On September 27, 2006, Nurse McGavitt requested defendant Dr. Aprea to re-evaluate Gallo and upon re-evaluation/re-examination by Dr. Aprea (at which Nurse McGavitt was present), he ordered an x-ray of plaintiff's leg. The x-ray was negative for fracture or dislocation.

### e. Plaintiff Is Transferred to Washington Hospital Emergency Room and to Presbyterian Hospital

On September 29, 2006, after further evaluation by prison medical staff and consultation with Dr. Aprea, and because plaintiff was running a fever, plaintiff was transferred to

7

Washington Hospital Emergency Room.

Upon examination at the Washington Hospital Emergency Room, plaintiff was suspected of having an infection. He was tested and was diagnosed with MRSA. Plaintiff was then transferred to UPMC Presbyterian where he underwent a series of surgeries to remove the infection and to plant antibiotic beads in his femur. While being treated for this infection, the Washington County Court released plaintiff on parole and he was not required to return to jail.

### f. Facts Regarding Policies and Practices and Knowledge of Washington County Defendants

Defendant Warden Pelzer was not aware of the incarceration of plaintiff during the period of time between June 30, 2006 and September 29, 2006.

Washington County Correctional Facility has no policy to deny inmates medical treatment that is appropriate. Although Warden Pelzer received information from the American Correctional Association, which highlighted the risk of MRSA, the Facility had no MRSA or general infectious disease policies. It is the policy of the Washington County Correctional Facility and corrections staff are trained to take "universal precautions" with all inmates, and those "universal precautions" include the wearing of gloves by all employees when treating inmates, washing their hands, and safely disposing of contaminated materials. There is a dispute regarding whether staff is required to train inmates on those precautions.

The written policies and procedures of the jail, as set fort in the inmate handbook, requires the inmates to clean and disinfect their cells and further states, "There is no excuse for a dirty cell. If you develop a rash or infection, **IT IS YOUR FAULT** and may be dealt with through the disciplinary system." According to the policy, upon assignment into a new cell, it is

the responsibility of the inmate to clean and spray a disinfectant into the cell. However, according to the testimony of defendant Warden Pelzer, under certain circumstances, if an inmate is placed into a new cell after lockdown, the inmate may not be given the opportunity to clean his cell at that time.[3]

IV. Discussion

**a. Plaintiff Has Failed to Demonstrate the Washington County Defendants Were Deliberately Indifferent to Plaintiff's Serious Medical Needs.**

In order to establish a violation of the right to adequate medical care under the Eighth Amendment, plaintiff must demonstrate a serious medical need and acts or omissions by prison officials that indicate a deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. 97,106 (1976); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order to establish deliberate indifference of a prison official, plaintiff must show that the prison official knew of and disregarded an excessive risk to the inmates health or safety. *Id.* In other words, "[t]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [/she] must also draw that inference." *Farmer v. Brennan,* 511 U.S. 825, 838 (1994). The test, then, for deliberate indifference, also termed as "recklessness" is a subjective one. *Id.* Allegations of medical malpractice, including negligence, are not sufficient to establish a constitutional violation. *White v. Napolean,* 897 F.2d 103, 108-09 (3d Cir. 1990).

The parties do not dispute that plaintiff had a serious medical need, and the Court agrees,

---

[3]Since the Court is declining to exercise supplemental jurisdiction over the state law professional negligence claim, and the Court is not ruling on the merits of the motion for summary judgment filed by the Physician defendants, the Court will not recount the concise statement of facts set forth by the Physician defendants.

9

and therefore, the only remaining question is whether plaintiff has presented facts to establish that prison officials (including Nurse McGavitt and Warden Pelzer), through their alleged acts and omissions, demonstrated a deliberate indifference to plaintiff's medical needs.

Judging the facts in the light most favorable to plaintiff, at most, this case presents a situation where Nurse McGavitt and other medical personnel were arguably negligent in the care and treatment of plaintiff's condition. However, the only evidence plaintiff produces to support his allegations of deliberate indifference is the fact that Nurse McGavitt had knowledge that plaintiff was infected with "numerous MRSA," yet she failed to order a follow up examination after plaintiff completed antibiotic treatment; that she did nothing when he first requested his sick call on September 19 only two weeks after his last treatment for MRSA; and she apparently called plaintiff and other inmates "fakers".

These actions or inactions of Nurse McGavitt do not establish deliberate indifference to his serious medical needs. The facts remain that plaintiff saw Nurse McGavitt and other nurses on at least eight occasions, he was prescribed antibiotics on three occasions by medical personnel, he was examined several times over the course of a three month period by medical staff, he was transferred to a clinic cell, and he was ultimately hospitalized. These facts, construed in the light most favorable to plaintiff, only evidences, at most, negligent actions or inactions of Nurse McGavitt.[4] Her actions or inactions, and the actions of the other prison officials do not remotely evidence a deliberate indifference to plaintiff's serious medical needs. Accordingly, the Washington County defendants' motion for summary judgment will be

---

[4]Plaintiff sets forth no evidence or argument regarding whether Warden Pelzer was deliberately indifferent to plaintiff's medical condition. This Court finds that plaintiff has failed to create an issue of fact on his Eighth Amendment claims against Warden Pelzer.

10

GRANTED.

> **b. Plaintiff has failed to demonstrate that Washington County or Defendant Pelzer failed to adopt policies to protect inmates from the threat of MRSA, or that their policies place inmates at direct risk of infection**.

In *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 689 (1978), the United States Supreme Court held that although municipalities and other local governmental bodies are "persons" within the meaning of section 1983, a municipality may not be held vicariously liable under section 1983 solely because of the existence of an employer-employee relationship with a tortfeasor. Instead,

> in *Monell* and subsequent cases, we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that *caused* the plaintiff's injury. . . . . Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials ***whose acts may fairly be said to be those of the municipality***. *Monell, supra*, at 694, 98 S.Ct., at 2027. Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law. 436 U.S., at 690-691, 98 S.Ct., at 2035-2036 (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168, 90 S.Ct. 1598, 1613-1614, 26 L.Ed.2d 142 (1970)).
>
> \* \* \*
>
> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. ***The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged***. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997).

In *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), the Court resolved a dispute amongst the Courts of Appeal and held that "the inadequacy of police training may serve as the basis for § 1983 liability *only where the failure to train amounts to deliberate indifference* to the rights of persons with whom the police come into contact." (emphasis added). The Court found this rule most consistent with its admonition in *Monell* that a municipality can be liable under § 1983 only if its policies are the moving force behind the constitutional violation. "Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983." *City of Canton*, 489 U.S. at 389.

The Court of Appeals for the Third Circuit explained in *Beck v. City of Pittsburgh,* 89 F.3d 966, 971-72 (3d Cir. 1996):

> When a suit against a municipality is based on § 1983, the municipality can ***only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom***. *Monell* . . . Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. . . .
>
> The Court's holding and reasoning in *Monell* have created a two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom. . . . In *Andrews* [*v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990)] this court articulated the distinctions between these two sources of liability:
>
> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

895 F.2d at 1480 (citations omitted); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir.1990) (same). Custom, on which the plaintiff relies in this case, may also be established by evidence of knowledge and acquiescence. *See Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir.1989), *cert. denied*, 492 U.S. 919, 109 S.Ct. 3244, 106 L.Ed.2d 591 (1989).

Moreover, a plaintiff must show not only an unlawful policy or custom of the municipality or governmental entity, he or she must also establish that such policy or custom was the proximate cause of the injuries sustained, by showing a plausible nexus or affirmative link between the alleged policy or custom and the injuries. *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996).

In support of his claim for governmental liability on a failure to adopt policies to protect inmates from the threat of MRSA and for its use of policies that placed inmates at a substantial risk of infection, plaintiff argues that Washington County was deliberately indifferent to plaintiff's serious medical needs in several respects. Plaintiff argues that the persons who were in charge of enacting and implementing policies on MRSA were not well versed regarding proper methods to prevent the spread of MRSA; that the employees failed to keep abreast of the current literature on MSRA; and that the policies of the jail actual placed the inmates at direct risk of contracting MSRA. Additionally, plaintiff alleges that the policy of placing the sole responsibility of cleaning and disinfecting their cells upon the inmates is inadequate and evidences a deliberate indifference to his serious medical needs.

Plaintiff also alleges that on August 21, 2006, the night he was placed into a new cell, at 9:15 p.m (which was 5 minutes before lockdown) he was not given the opportunity to disinfect his cell by the corrections officer. Plaintiff alleges that he was not permitted to clean his cell until a few days later. Plaintiff further alleges that the inmate who was housed in that cell

immediately before him was treated for "MRSA-like" symptoms on the same day plaintiff was transferred to his cell.

While the Court agrees that the corrections officer did not stringently follow the policy of allowing plaintiff to disinfect his cell upon placement in the new cell, plaintiff has presented no evidence to show that the corrections officer was aware of or had any knowledge that the prior inmate was treated for MRSA-like symptoms on the same day. There is also no evidence that the corrections officer had any knowledge that the prior inmate had been sick.

As to Nurse McGavitt, while it would have been more ideal for her to have alerted the corrections officer in charge of that cell that the inhabitant had some illness for which Bactrim was prescribed, there is no evidence that Nurse McGavitt knew that the previous inmate was leaving the cell on that day, and/or that a new inmate would be inhabiting the cell immediately thereafter.

Accordingly, while the corrections officer may have been negligent in not following the jail policy to allow plaintiff to disinfect the cell, and while Nurse McGavitt may have been negligent in failing to alert the corrections officer of the prior inmate's illness, none of these actions evidence a policy or custom by Washington County that was deliberately indifferent to plaintiff's serious medical needs. Further, Washington County's failure to keep abreast of the literature on MRSA and the failure have a clear policy to prevent the spread of MRSA, while not admirable, does not evidence recklessness or deliberate indifference of the governmental unit or the Warden.[5]

---

[5] The Court also finds that the affidavit of former corrections officer Sadler to the effect that Nurse McGavitt arbitrarily denied sick calls of inmates, that it was "well known at the jail" that several listed inmates and one corrections officer had MRSA, and that Sadler believed

Washington County may not be held liable for the unconstitutional[6] acts of its employees on a theory of respondeat superior, *Berg v. County of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000), and there is simply no evidence to support the conclusion that either Washington County or Warden Pelzer were the "moving force" behind the injury alleged. Instead, the most that plaintiff can show with regard to the policies or customs of Washington County and Warden Pelzer is negligence, and "a showing of simple or even heightened negligence will not suffice" *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 407 (1997).

In support of his argument against Washington County and Warden Pelzer for *Monell* liability, plaintiff cites a recent case by the Honorable Donetta Ambrose, *Locke v. County of Allegheny Department of Corrections*, 2008 WL 163047 (W.D. Pa. January 15, 2008), in which the Court held that an inmate who contracted MRSA could maintain an action against the Department of Corrections at the Allegheny County for governmental liability under section 1983 by alleging that the policies of the Department of Corrections increased the risk and likelihood of harm. This Court notes, however, that the procedural posture of that case is different from the present case because the Court in *Locke* was reviewing the allegations in the context of a motion to dismiss.

This Court finds the case of *Kaucher v. County of Bucks*, 455 F.3d 418 (3d Cir. 2006) to

---

several factors contributed to the spread of MRSA (such as not allowing inmates to take twice weekly showers, and to disinfect their cells, and not properly drying the bath towels when laundering them), is not sufficient evidence to create a material issue of fact against the Washington County defendants. The allegations, accepted as true, do not evidence deliberate indifference to plaintiff's medical needs, nor do they evidence unconstitutional policies or customs of Washington County.

[6]The Court has already found no constitutional violation by the employees of Washington County.

be instructive. In *Kaucher*, a corrections officer filed suit under section 1983 against the county and several county employees, alleging a violation of substantive due process rights under the state-created danger theory of liability, and contended that he contracted MRSA due to defendants' alleged conscience shocking behavior. In an opinion written by Chief Judge Scirica, the United States Court of Appeals for the Third Circuit analyzed defendants' conduct under the standard of deliberate indifference and affirmed the District Court's grant of summary judgment in favor of the defendants. The Court of Appeals held that the defendants conduct in failing to prevent and to take remedial steps to eradicate MRSA, and in failing to educate and warn the corrections officers of the risk of infection, "does not exhibit deliberate indifference to a serious risk of prison officials contracting MRSA infections." *Id*. at 428. The Court of Appeals went on to note that at the time defendants made their decisions as to the conditions at the jail, there is no evidence that they were either objectively or subjectively aware that their remedial or preventative measures were inadequate to protect corrections officer from infections as defendants were in compliance with the state standards and only two of 170 officers tested positive for MRSA. *Id.*

Although this Court recognizes that the claim in *Kaucher* was brought by a prison officer for a violation of substantive due process rights, whereas here, plaintiff was an inmate who has alleged Eighth Amendment violations, this Court nevertheless finds the analysis of defendants' actions, inactions, and failure to train on the risks of contracting MRSA as not rising to the level of deliberate indifference, to be informative.[7]

---

[7]Prior to the *Kaucher* case, in *Keller v. County of Bucks,* 2005 WL 675831 (E.D. Pa. March 22, 2005), *affirmed* 209 Fed. Appx. 201 (3d Cir. 2006), a related case, several inmates brought suit against the County of Bucks alleging Eighth Amendment violations for the

16

### c. Qualified Immunity

The next question is whether defendants are entitled to qualified immunity. In analyzing qualified immunity claims for a law enforcement officers alleged violation of a constitutional right, the Court may apply a two-step inquiry. *Pearson v. Callahan,* --- U.S. ----, 2009 WL 128768 (U.S. Jan. 21, 2009) (holding that Court may but is no longer required to first determine whether the facts make out a violation of constitutional right)*; Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1774 (2007); *see also Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

In *Scott*, the United States Supreme Court set forth the first question: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" *Scott*, 127 S.Ct. at 1774 (quoting *Saucier v. Katz*, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.*

---

contracting of MRSA by several inmates, that case went to verdict, and the verdict was in favor of plaintiffs . The district judge, in supporting the verdict, which was ultimately upheld by the Court of Appeals for the Third Circuit, noted that there was grossly inadequate medical treatment, a failure to keep the showers and food handling areas clean, and a failure to instruct inmates on the prevention of infectious diseases.

The facts in *Keller,* however, are dissimilar to the present case because there is no evidence here to show that the showers, food handling areas, or any other common areas were unclean, only that one corrections officer failed to follow the procedure of allowing plaintiff to disinfect his cell on one occasion. And, in fact, plaintiff was required to take his shower last and was also required to clean it, which was a precaution the jail took based upon his infection. Further, the medical treatment of plaintiff, although arguably negligent, is not nearly as egregious as the treatment received by plaintiffs in *Keller*, where one plaintiff was unable to even see a nurse for days, and was denied bandages after he underwent surgery, and the other plaintiff was administered only Tylenol after his infection sore began to discharge. This Court finds *Keller* to be factually distinguishable from the present case.

Having already found that plaintiff has failed to establish a violation of his Eighth Amendment rights, the Court answers the first question in the negative and will not address part two of the above inquiry.

E.       **Remaining State Law Claim**

Plaintiff has advanced a substantial state law claim for professional negligence against the physician defendants. While the physician defendants also move for summary judgment and assert a number of arguments in support of their position, having already granted summary judgment for the Washington County defendants, thereby dismissing all federal claims, this Court will exercise its discretion not to exercise its supplemental jurisdiction. As set forth in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966), and as codified in 28 U.S.C. § 1367©, "district courts may decline to exercise supplemental jurisdiction" over a state law claim if "the claim raises a novel or complex issue of State law . . . [or] the district court has dismissed all claims over which it has original jurisdiction." *Combs v. Homer,* 540 F.3d 231, 253-54 (3d Cir. 2008) (quoting 28 U.S.C. § 1367©). A Court has the discretion to refuse to exercise supplemental jurisdiction and to remand state claims to a state forum when 'values of judicial economy, convenience, fairness, and comity counsel' in favor of remand.[8] *Id.* citing *Hudson United Bank v. LiTenda Mortgage Corp.,* 142 F.3d 151, 157 (3d Cir. 1998)(quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

In this case, the Court has already dismissed all claims over which it had original jurisdiction, and judicial economy, fairness and convenience do not require this Court to retain

---

[8]Because the original complaint was not filed in state court, the Court cannot remand this case. Rather, the Court will dismiss the complaint against the physicians defendants without prejudice for an action to be filed in state court.

jurisdiction. The remaining claims are brought by a Pennsylvania resident and relate to alleged professional negligence of Pennsylvania doctors and medical personnel. The state court generally handles such cases and has substantial expertise in such cases. There being no "exceptional" reason why the Court should retain this case involving only a state claim, *Atkinson v. Old Economic Financial Consultants, Ltd.*, 2006 WL 2246405, *2 (W.D. Pa. 2006), the Court will dismiss the professional negligence count (Count IV of the amended complaint, doc. no. 34) without prejudice for said claim to be re-filed in state court.

## V. Conclusion

This Court finds that plaintiff has failed to present evidence from which a reasonable fact finder could infer that Nurse McGavitt, Warden Pelzer, or any other prison official on behalf of Washington County were "deliberately indifferent" to his serious medical needs, in violation of the Eight Amendment and Section 1983. Having found no underlying constitutional violation, plaintiff's *Monell* claims also fail.

The Court will grant the Washington County defendants' motion for summary judgment (doc. no. 62). The Court will dismiss the state law professional negligence claim against the Physician defendants without prejudice for said claim to be re-filed in state court pursuant to 42 Pa.C.S. § 5103(b), and the Court will decline to rule on the physician defendants' motion for summary judgment (doc. no. 59). An appropriate order follows.

s/Arthur J. Schwab  
Arthur J. Schwab  
United States District Judge

cc: All Registered ECF Counsel and Parties